IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBIN D. CATRON, ) | |
| ) | |
| Plaintiff, ) | Case No. 08 C 2210 |
| ) | |
| v. ) | |
| ) | Magistrate Judge |
| MICHAEL J. ASTRUE, Commissioner ) | Arlander Keys |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robin D. Catron moves this Court for summary judgment, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, reversing the decision of the Commissioner of Social Security ("Commissioner"), who denied her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") Benefits. 42 U.S.C. § 401 et seq. (West 2008). In the alternative, Ms. Catron seeks an order remanding the case to the Commissioner for further proceedings. For the reasons set forth below, the Court denies Plaintiff's Motion for Summary Judgment, and the Commissioner's motion is granted.

## PROCEDURAL HISTORY

On December 10, 2004, Ms. Catron filed an application for DIB and SSI, claiming that she was unable to work as of September 27, 2003, because of diabetes, fatigue, and frequent urination. R. at 11. Her claim was denied on March 10, 2005. R. at 30. On May 4, 2005, Ms. Catron filed a Request for Reconsideration. R.

at 35, which was denied on July 13, 2005. R. at 37.

A hearing was held on September 21, 2006, before ALJ Paul Armstrong, in Orland Park, Illinois. R. at 379. On January 17, 2007, the ALJ issued an unfavorable decision, finding that Ms. Catron was not disabled within the meaning of the Social Security Act (Act). R. at 21. Ms. Catron filed a request for review of the ALJ's decision with the Social Security Administration's Appeals Council on March 14, 2007. R. at 10. On February 20, 2008, the Appeals Council denied the request for review. R. at 5. Consequently, the ALJ's January 17, 2007 decision stands as the final administrative determination of the Commissioner.

## FACTUAL HISTORY

### A. Hearing of September 21, 2006

At the hearing on September 21, 2006, the ALJ heard from Ms. Catron, John Cavenagh, M.D., a Medical Expert ("ME"), and Michele Peters, a Vocational Expert ("VE"). R. at 379.

### Ms. Catron's Testimony

Upon examination by the ALJ, Ms. Catron testified that she had last worked as an assistant to mentally ill patients, and had not worked since her alleged onset date of September 27, 2003. R. at 384. She was 35 years old at the alleged onset of her disability.

Ms. Catron testified that she graduated from high school and attended one year of college. R. at 390. She has not worked

since her diagnosis. R. at 384. Ms. Catron explained that her illness has changed her life, and its effects have forced her to move in with her parents. Ms. Catron testified that she does not do laundry or clean her room; instead her mother performs these tasks for her. *Id.*

Ms. Catron testified that working at a sedentary job would be hard for her because of issues with frequent urination. R. at 388. Her problems with frequent urination make it difficult for her to get continuous sleep at night, and this, combined with her diabetes, makes her too exhausted to do the things she enjoyed doing before her diagnosis, like playing with her niece and nephews, visiting with friends, shopping, attending church, or driving.

Ms. Catron also complained of tingling in her legs. She stated that she was advised to elevate her legs, R. at 385, and to take aspirin to alleviate the problem. R. at 396. Ms. Catron explained that she does not, however, walk with a cane or other assistive device, and that she can lift 10 to 15 pounds. R. at 389.

Ms. Catron testified that she had been diagnosed with congestive heart failure, but that her doctors had controlled it. R. at 388. Ms. Catron testified that, although she continues to smoke, R. at 384, she has no issues with shortness of breath. R. at 388. Finally, Ms. Catron stated that she has issues with

dizziness and has fallen on a few occasions. R. at 396-97.

Testimony of Medical Expert

At the September 21, 2006 hearing, ME John Cavenagh, M.D., opined that Ms. Catron would be limited to light level of activity. R. at 399. The ME testified that the medical evidence supported the diagnosis of diabetes mellitus, poorly controlled, but without evidence of neuropathy, acidosis, or retinitis proliferans. *Id.* The ME further testified that the medical records did not address the issue of incontinence. R. at 400.

Testimony of Vocational Expert

At the hearing, VE Michele Peters characterized Ms. Catron's vocational history as a community service worker, low end, semiskilled in nature. R. at 402. However, the VE testified that the exertional level for this vocation could be heavy. R. at 402.

The ALJ asked Ms. Peters, whether a hypothetical person limited to light activity, with access to the bathroom three times per day, with an opportunity to change protective undergarments, would be capable of returning to the past relevant work of the Claimant. R. at 402. Ms. Peters replied that there would be no past relevant work that could be performed, but that there would be unskilled positions at the light exertional level. R. at 402. She opined that there would be office clerking types of positions (6,500 positions), assembly type of positions (5,000

positions) and clerking type of positions (1,500 positions) available to this hypothetical individual. R. at 402-403.

State Agency Physician

State agency physician, Dr. Robert Patey, reviewed the medical evidence and prepared a Physical Residual Functional Capacity Assessment Report on February 24, 2005. R. at 269-76. In the Report, Dr. Patey opined that Ms. Catron could do the following: 1) occasionally lift and/or carry fifty pounds; 2) frequently lift and/or carry twenty-five pounds; 3) stand and/or walk about six hours in an eight-hour workday; 4) sit (with normal breaks) for a total of six hours in an eight-hour workday; and 5) push and/or pull (including operation of hand and/or foot controls) for an unlimited time, other than as shown for lift and/or carry. R. at 269-75. He found that Ms. Catron had no manipulative or visual limitations. *Id.* The physician also noted that Ms. Catron's gait and motor strength were normal, and that, while her condition was severe, she should be capable of medium work. R. at 276.

B. Medical Evidence

The medical evidence in the record shows that Ms. Catron was seen in several Emergency Departments for diabetes mellitus, poorly controlled. R. at 119-367. She presented to the South Suburban Hospital Emergency Department on May 8, 2003, complaining of middle or lower abdominal pain for two days, and

with urinary frequency and increased thirst. R. at 119. Ms. Catron was diagnosed with new onset adult diabetes. R. at 120. She again presented to the South Suburban Hospital Emergency Department on June 4, 2003 with uncontrolled diabetes and complaints of increased urinary frequency and was subsequently admitted. R. at 122-25. Ms. Catron complained of being tired, having blurred vision three days prior to her visit to the Emergency Department, and polydipsia. R. at 125. Ms. Catron denied any chest pain, respiratory distress, abdominal pain, or dysuria. R. at 127. Ms. Catron did not present with leg edema. R. at 127-28. Ms. Catron's physician noted that she was doing well with self Accu-Checks. R. at 123.

Ms. Catron presented to Ingalls Memorial Hospital on September 12, 2003, with a history of hyperglycemia. R. at 152. She complained of left wrist and finger tingling/numbness. *Id*. Upon conducting an extremity exam, the attending physician noted that Ms. Catron had left wrist or hand with median nerve distribution sensory changes typical of carpal tunnel syndrome. R. at 153.

Ms. Catron was admitted to Ingalls Memorial Hospital on September 27, 2003 for uncontrolled diabetes and leg edema with no deep vein thrombosis. R. at 169. Upon discharge, she was feeling much better. R. at 169. Ms. Catron presented to Ingalls Memorial Hospital on October 14, 2003, complaining of chest pain

and polydipsia, but denied any shortness of breath or polyuria. R. at 238. She was again admitted to Ingalls Memorial Hospital on November 9, 2003 complaining of shortness of breath, heart palpitations, and mild edema in her feet. R. at 195. Ms. Catron was feeling better upon discharge. R. at 197.

On January 26, 2004, she was again admitted to Ingalls Memorial Hospital with complaints of nausea and vomiting. R. at 207. Ms. Catron also complained of always being short of breath. R. at 210. Nine months later, on September 27, 2004, she was again admitted to Ingalls Memorial Hospital with complaints of high glucose levels and polyuria. R. at 221-23.

Ms. Catron was seen in Ingalls Memorial Hospital on October 25, 2004, for complaints of weakness, dizziness, polyuria, polydipsia, and a buttock abscess. R. at 252. She was diagnosed with hyperglycemia, her abscess was treated, and she was discharged. R. at 258.

Oak Forest Hospital reported sensory neuropathy was present on January 27, 2005. R. at 327. Ms. Catron complained that she was experiencing tingling in her legs and sometimes lost her balance when walking. R. at 315.

On April 10, 2005, Ms. Catron presented to Ingalls Memorial Hospital with complaints of difficulty ambulating and a history of falls. R. at 291. On April 14, 2005, she presented to South Suburban Hospital complaining of numbness in her legs and

shortness of breath, and stating that she loses her balance when walking. R. at 304. On May 25, 2005, Ms. Catron presented to the Oak Forest Hospital outpatient clinic complaining of numbness in her legs and loss of balance. R. at 314. She was admitted to Ingalls Memorial Hospital on April 8, 2006, for diabetes, gastroenteritis, polyuria and polydipsia, but no extremity edema R. at 353-55. Ms. Catron takes many medications, including insulin, Actos, Glucophage, and Glipizide.

C. The ALJ's Decision

In his January 17, 2007 decision, the ALJ found that Ms. Catron has diabetes, urinary frequency, and dizziness. R. at 22. The ALJ found that these impairments were severe within the meaning of the Regulations. *Id.* However, the ALJ found that Ms. Catron did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. R. at 23.

In assessing Ms. Catron's residual functional capacity ("RFC"), the ALJ determined that Ms. Catron retained the capacity to lift and/or carry up to 10 to 20 pounds, stand/walk for 6 hours in an 8 hour workday, and sit for 2 hours in an 8 hour workday, with access to the restroom three times during the workday at regular intervals, along with an opportunity to change protective garments. R. at 23. The ALJ further determined that Ms. Catron could not work at unprotected heights or around

dangerous or moving machinery or open flames and bodies of water. R. at 23.

In explaining his finding, the ALJ noted that "while the claimant undoubtedly may experience some pain, limitations, and restrictions from her impairments, the medical record in its entirety demonstrates that the claimant has no greater limitations in her ability to perform work activities than those reflected in the residual functional capacity reached in this decision." R. at 24.

## STANDARD OF REVIEW

A district court reviewing an ALJ's decision must affirm if the decision is supported by substantial evidence and is free from legal error. 42 U.S.C. § 405 (g); *Steele v. Barnhart*, 290 F. 3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla"; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing an ALJ's decision for substantial evidence, the Court may not "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the

Commissioner, not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

## SOCIAL SECURITY REGULATIONS

An individual claiming a need for DIB and SSI must prove that he or she has a disability under the terms of the Social Security Administration ("SSA"). In determining whether an individual is eligible for benefits, the Social Security regulations require a sequential five step analysis. First, the ALJ must determine if the claimant is currently employed; second, a determination must be made as to whether the claimant has a severe impairment; third, the ALJ must determine if the impairment meets or equals one of the impairments listed by the Commissioner in 20 C.F.R. Part 404, Subpart P, Appendix 1; fourth, the ALJ must determine the claimant's RFC, and must evaluate whether the claimant can perform his or her past relevant work; and fifth, the ALJ must decide whether the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). At steps one through four, the claimant bears the burden of proof; at step five, the burden shifts to the Commissioner. *Id.*

## DISCUSSION

Ms. Catron contends on appeal that the ALJ's decision is not supported by substantial evidence and that the ALJ failed to consider or credit the fluctuating nature of the severity of Ms.

Catron's symptoms in arriving at her RFC. In addition, Ms. Catron takes issue with the ALJ's credibility determination. The Court will address Ms. Catron's claims in turn.

## A. Residual Functional Capacity

The ALJ's determination that Ms. Catron retained the RFC to perform light work is supported by substantial evidence in the record. The ALJ reasonably relied on both the testimony of the medical expert and on findings of the state agency medical consultant.

The objective medical record supports the ALJ's finding that Ms. Catron can perform light work. Although Ms. Catron's medical record shows a history of diabetes, her condition was consistently improved after treatment. In his Physical Residual Functional Capacity Assessment Report, Dr. Patey opined that Ms. Catron was capable of medium work.

The Medical Expert, Dr. Cavenagh, testified that Ms. Catron had poorly controlled diabetes, but that the medical evidence did not address the issues of incontinence or of neuropathy. R. at 400. Dr. Cavenagh stated that polyuria and polydipsia are common symptoms of diabetes, but noted that these symptoms were not developed as major impairments in the medical records. Further, Dr. Cavenagh stated that, while visual disturbances are common in diabetics, there was no evidence in the medical records of retinopathy. Dr. Cavenagh did not state that these symptoms

would prevent Ms. Catron from performing light work. Ms. Catron has failed to show that she suffers from greater limitations than those identified by Dr. Cavenagh.

Ms. Catron contends that Dr. Cavenagh's testimony was ambiguous and without sufficient specificity to support a finding that she could perform light work. Specifically, Ms. Catron makes much of the fact that, when Dr. Cavenagh was asked by the ALJ "What kind of residual functional capacity would you opine in this case," Dr. Cavenagh reponded that Ms. Catron would "certainly be limited to light level of activity" R. at 399, as opposed to stating that she would be capable of light work.

The Court finds nothing ambiguous about Dr. Cavenagh's testimony. In assessing the extent of disability, the Commissioner is entitled to rely upon the conclusions of qualified, expert, medical professionals. *Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993) (holding that the findings of reviewing physicians constituted substantial evidence in support of the Secretary's decision to deny benefits). Given that Dr. Cavenagh's statement that Ms. Catron would be limited to a light level of activity was in direct response to the ALJ's question regarding her RFC, the ALJ was reasonable in concluding that Dr. Cavenagh was opining that Ms. Catron had the RFC to perform light work. *See generally, Cass*, 8 F.3d at 556, citing *Ehrhart v. Secretary of Health and Human Services*, 969 F.2d 534, 540 (7th

Cir. 1992)("When the record supports the conclusion that the VE considered the medial reports and documents, his responses are probative.")

Ms. Catron also claims that the ALJ relied on isolated favorable findings, and frequently ignored evidence substantiating Ms. Catron's significant problems. Here, the medical records reflect recurring but, in most cases, relatively mild symptoms of diabetes. Ms. Catron only complained of symptoms lasting, at most, a few days, and each time she was treated, she responded well. Dr. Cavenagh stated that the medical evidence failed to develop as a major issue incontinence, polyuria, polydipsia, and retinopathy. While Ms. Catron is correct that the progress note taken on April 8, 2006 listing her condition as "improved" was specific to her complaints of abdominal pain, this does not undermine the ALJ's ultimate disability determination. *See Shramek v. Apfel,* 226 F.3d 809, 813-15 (7th Cir. 2000). More importantly, the Court finds that, in doing so, the ALJ did not ignore material medical evidence demonstrating that Plaintiff was more limited than as found in his RFC.

Finally, Ms. Catron asserts that the ALJ improperly played doctor in fashioning her RFC, as there was no evidence in the Record to support his findings. To the contrary, the Court finds

that the ALJ's RFC was based upon and consistent with Dr. Cavenagh's testimony.

The ALJ's RFC finding is supported by two medical opinions and is uncontroverted by any medical evidence. Under the "substantial evidence" standard, the ALJ need only "minimally articulate" his reasoning. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). The ALJ minimally articulated his reasoning for his findings and the record supports his conclusion, and, therefore the RFC determination is affirmed.

## B. Credibility

Ms. Catron next contends that the ALJ improperly discounted her testimony concerning the frequency and severity of her symptoms, because it was unsubstantiated by the medical records submitted.

In determining credibility an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 404.1529c; S.S.R. 96-7p, and justify the finding with specific reasons, *see Steele*, 290 F.3d at 941-42. In disability cases, an ALJ's credibility determinations are "afforded special deference because the ALJ is in the best position to see and hear the witness and determine credibility." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). The ALJ's ultimate conclusion of fact must

stand, even if reasonable minds might differ on the significance of conflicting and inconsistent evidence. *See Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir. 1987). Ms. Catron bears the burden of demonstrating that the ALJ's credibility determination was "patently wrong." *Diaz v. Chater,* 55 F.3d 300, 308 (7th Cir. 1995).

The ALJ conceded that the medical documentation was somewhat sparse; but while the ALJ has a duty to make a complete record, the ALJ's inquiry need only be reasonable. *Scheck v. Barnhart* 357 F.3d 697, 702 (7th Cir. 2004). The Seventh Circuit has noted, "[t]he difficulty is that no record is 'complete'-one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on. Taking 'complete record' literally would be a formula for paralysis." *Kendrick v. Shalala,* 998 F.2d 455, 456 (7th Cir.1993). Here, the hearing transcript indicates that the ALJ attempted to make as complete a record as possible. The ALJ asked Ms. Catron about her symptoms and how they affected activities of daily living.

In assessing Ms. Catron's credibility, the ALJ considered her diagnosis of uncontrolled diabetes, and the exacerbating condition of her obesity. The ALJ considered her complaints of blurred vision, tingling in her extremities, and difficulty breathing. The ALJ also considered Ms. Catron's testimony that

she cannot sit for even two hours due to urinary frequency, and her need to rest throughout the day due to her fatigue. The ALJ properly weighed the evidence and concluded that Ms. Catron's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.

As the ALJ concluded, the records suggest that Ms. Catron suffered from common symptoms of diabetes for no more than a few days at a time and they responded well to treatment. The ALJ found that, while Ms. Catron may indeed suffer from some pain, limitations, and restrictions from her impairments, the medical evidence did not support the extent of limitations to which she complained. Indeed, the ALJ noted that Plaintiff failed to mention many of those symptoms when she sought out medical attention. Moreover, in concluding that Plaintiff's subjective complaints were not entirely credible, the ALJ relied upon instances where Ms. Catron's testimony was directly contradicted by the medical evidence. For example, Ms. Catron alleged disabling numbness in her hands and legs, but her motor, sensory and musculoskeletal examinations were generally normal. The ALJ's decision to rely upon these inconsistencies was reasonable and appropriate in concluding that Ms. Catron's complaints of pain were not entirely credible.

## CONCLUSION

Substantial evidence supports the ALJ's determination that Ms. Catron was not disabled. Therefore, Ms. Catron's Motion for Summary Judgment is Denied, and the Commissioner's Motion for Summary Judgment is Granted.

Dated: August 18, 2009     ENTER:

ARLANDER KEYS
United States Magistrate Judge